## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br><br>vs.<br><br><br>KEVIN LEWIS and OTIS PONDS,<br><br>*Defendants.* | Case No. 20-10028-11, 15-EFM |

## MEMORANDUM AND ORDER

The Sixth Amendment Right to a Speedy Trial is foundational to the criminal justice system in this country.[1]  Defendants Kevin Lewis and Otis Ponds, challenging the almost two-year delay between their indictment and the date set for trial, now seek to vindicate that right. Individually, each moves to dismiss the indictment against him with prejudice because of Government's failure to speedily bring them to trial.  The Government, in response, contends that the delay is solely the fault of the 24 Defendants in this case, and not its own.  Though the Court ultimately concludes that the delay is entirely the fault of the Government, simply pinning the

---

[1] *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967) ("We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment. That right has its roots at the very foundation of our English law heritage.").

blame is not enough to secure the extraordinary remedy of dismissal with prejudice. Because two of the relevant factors do not support Defendants' Speedy Trial claims, the Court must deny Defendants' Motions to Dismiss for Speedy Trial Violations (Docs. 561 and 608).

## I.        Factual and Procedural Background

The investigation that spawned this case was sprawling. This is attributable not only to the large number of Defendants in this case and the complexity of their alleged drug trafficking organization, but also to the investigatory tactics employed by the FBI. The FBI obtained six trap and trace warrants and three Title III interception authorizations that resulted in approximately 60,000 intercepted communications. It undertook physical surveillance, executed various search warrants, and placed two pole cameras to watch the activities of the suspected members of the drug trafficking organization. This last item, which has consumed the attention of this Court for much of the case, is now singled out by Defendants as the source of their woes.

A pole camera is simply a camera placed on a utility pole and set to monitor a particular location. It does this for as long as the agency that placed it decides to leave it up and let it run. The first pole camera in this case—and the only one relevant to this motion—was placed by the FBI on a utility pole outside of the house of Defendant Dorzee Hill, on October 4, 2018. The camera was left to run 24 hours per day, 7 days per week, for between 13 and 14 months. By the time the camera was taken down, it had captured approximately 10,000 hours of footage. The Government has stated that, were all 24 Defendants still in this case, it would have used between two and three hours of this footage at trial. With only three Defendants remaining, the Government believes it might only use one clip from the footage.

The pole camera was removed sometime in November 2019, four months after the wiretaps in this case ended and the investigation was effectively complete. Three months later, on February

26, 2020, a grand jury indicted 24 Defendants in this case, including Kevin Lewis and Otis Ponds. Kevin Lewis was arrested on March 4, 2020, and made his initial appearance two days later. Otis Ponds was arrested in California on December 23, 2020, and made his initial appearance a week later in the Central District of California. He first appeared before this Court on March 1, 2021. Both Defendants have remained in custody since their initial arrests.

At the outset of this case, it was clear that the sheer volume of the discovery involved would present a problem. Defendants were faced with the herculean task of reviewing approximately 10,000 hours of footage, not to mention the remaining discovery. To assist defense counsel, the Court appointed a Coordinating Discovery Attorney, and the 24 defense teams collectively hired several paralegals to conduct a "brute force" review of the footage, but discovery review remained slow-going. As such, the initial trial date of May 26, 2020, was impossibly soon.

Prior to this initial trial date, the Government filed a motion to designate the case as complex. After a status conference with counsel, the Court designated the case complex, overruling Lewis's objection to Government's motion in which he "invoke[d] his right to a speedy and public trial." No other Defendant objected to the designation of the case as complex. Since that point, the Court has held many status conferences regarding the progress of discovery and, given the difficulty of the task Defendants were faced with, progress has often been slow. Deadlines and the trial date have been continued several times, at the collective request of Defendants. Lewis has been the only Defendant to object to every continuance. Otis Ponds, while he has not noted his objection at any other time, made what he called a Demand for a Speedy Trial on July 19, 2021.

Ultimately, review of the discovery in this case was completed sometime in September 2021. The Court set a trial date of February 28, 2022, and this date has remained firm up to this

point.  Kevin Lewis and Otis Ponds now move to dismiss the indictments against them with prejudice for speedy trial violations.  The Court held a hearing on those motion on February 11, 2022.  Having heard the arguments, the Court is persuaded that both motions must be denied.

## II.      Discussion

### A.      Constitutional Speedy Trial Claims

Both Defendants claim their Constitutional Speedy Trial Rights were violated.  The Sixth Amendment to the United State Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[2]  This guarantee reflects "the concern that a presumptively innocent person should not languish under an unresolved charge."[3] The Supreme Court has identified four factors for courts to weigh in determining whether a defendant has been deprived of this right: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[4]  These factors, called the *Barker* factors after the seminal case in which they were enunciated, are not to be applied like some inflexible, mathematical equation.  Rather, "none of the four factors identified above [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."[5]  A court must instead balance the factors together with the other relevant circumstances of the particular case.[6]

---

[2] U.S. Const. amend. VI.

[3] *Betterman v. Montana*, 578 U.S. 437, 443 (2016).

[4] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[5] *Id.* at 533.

[6] *Id.*

1.      *Length of the Delay*

This first factor involves a two-part inquiry.[7]  First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."[8]  Delays of around one year are typically sufficient to trigger this analysis.[9]  The delay in this case is approaching two years, as both Ponds and Lewis were first indicted on February 26, 2020.[10]  This is sufficient to trigger the speedy trial analysis.

The second inquiry under the first *Barker* factor is the "extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."[11]  "The greater the delay, the more that factor favors the defendant."[12]  In undertaking this inquiry, the "court should take into consideration the nature of the charges."[13]  For instance, when the charges are complicated, even a two-year delay may not weigh in favor of the defendant.[14]

The delay, now closing in on two years, has stretched to "twice the time presumed to be ordinary."[15]  Defendants argue that in its recent case, *United States v. Rey*,[16] the Court found this factor weighed in favor of the defendant in similar circumstances.  But that case, though complex,

---

[7] *United States v. Muhtorov*, 20 F.4th 558, 638 (10th Cir. 2021).

[8] *Doggett v. United States*, 505 U.S. 647, 651 (1992) (quoting *Barker*, 407 U.S. at 530).

[9] *Muhtorov*, 20 F.4th at 638.

[10] "The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004).

[11] *Doggett*, 505 U.S. at 652.

[12] *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015)

[13] *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (citing *Barker*, 407 U.S. at 531).

[14] *Id.*

[15] *United States v. Banks*, 761 F.3d 1163, 1182–83 (10th Cir. 2014) (quoting *Seltzer*, 595 F.3d at 1176).

[16] 2021 WL 5371489 (D. Kan. 2021).

did not rise to the complexity presented by this case.  Rather, this case involved around 60,000 intercepted calls and texts, and 10,000 hours of pole camera footage.  This was a sprawling organization involving many more people than just the Defendants in this case, of whom there are already quite a few, and many more than in *Rey*.  The Court therefore concludes that the complexity of this case renders this factor neutral, not weighing in favor of Defendants or the Government.

 2. *Reason for the Delay*

The second factor is "the flag all litigants seek to capture."[17]  The reason for this is a matter of some conjecture, but the Court suspects it is because this factor all comes down to *placing blame*, and it is particularly cathartic and even advantageous, especially in litigation, to blame someone else.  Unsurprisingly then, the Government urges the Court to conclude Defendants are to blame for the delay, and Defendants contend the opposite conclusion is appropriate.

The burden is on the Government to establish an acceptable reason for the delay.[18] "Purposeful delay or delay to gain advantage weighs heavily against the government, while '[a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily.' "[19]  By contrast, when the delay is the fault of the defendant, this factor will weigh against him.[20]

There is, of course, no evidence of purposeful delay on the part of the Government in this case.  But the Court would be remiss if it did not discuss the investigatory tactics employed by the Government, which may very well rise to the level of negligence.  The FBI, in its investigation, chose to set up a pole camera and leave it running for approximately 10,000 hours.  It did so with

---

[17] *Muhtorov*, 20 F.4th at 639 (quotation omitted).

[18] *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004).

[19] *United States v. Gould*, 672 F.3d 930, 937 (10th Cir. 2012) (quoting *Barker*, 407 U.S. at 531).

[20] *Banks*, 761 F.3d at1183.

at least some knowledge that, in the event the investigation led to charges, all of this footage would be turned over to defense counsel to review. The reason for the FBI's investigatory choice, if any, has thus far escaped the Court.

Pole cameras are naturally a viable investigative tactic, and the Court is not disparaging their typical use. These cameras, as the Government suggests, are useful in that they show the persons who enter and exit a location, and thus can be used to identify contact between suspects and identify new suspects. But by the sheer volume of footage, the use of the pole camera in this case is clearly far from typical. The Government has offered no clear reason why it needed to maintain *continuous* digital surveillance of Defendant Hill's house for well over a year to effectively investigate this case. Nor can the Court, though possessing an active imagination, supply one. This seems reason enough to conclude that the Government's investigative tactics in this case are the entire reason for the delay.

Perhaps anticipating the Court's ire, the Government makes three responses to extricate itself from this sticky situation. First, the Government blithely suggests that it was merely complying with its discovery obligations by turning over the 10,000 hours of footage. Naturally it was obligated to turn over this footage. But that really misses the point. The Court is not criticizing the Government for its compliance with its discovery obligations, but rather for making unreasonable investigative choices that led to, in the Court's view, a wholly unnecessary mountain of discovery.[21] That mountain of discovery has been an enormous burden on the defense counsel, who were ethically obligated to review it, and has resulted in scheduling delays time and time

---

[21] By way of reminder, the Government has stated that it intends to use at trial maybe 2 or 3 hours of the 10,000 hours collected. The Court is grateful for this, as a trial with 10,000 hours of evidence seems particularly unwieldy.

again.  And as much as the AUSAs litigating this case would like to distance themselves from the choices of the "investigative agencies" responsible, those investigative agencies are essentially their client, and they are responsible for the choices of their client.

Second, the Government warns the Court that an adverse decision on Defendants' motions will "effectively shut down the use of pole cams as an investigative technique."  As the Court has said, pole cameras are of course a viable technique when used appropriately.[22]  But their use, or rather misuse, in this case was far from appropriate.  The Court can only hope that its decision will shut down this misuse.

Finally, and most relevantly, the Government contends the reason for the delay is Defendants' collective and repeated requests for continuances to review the discovery, and thus the Court should conclude that Lewis and Ponds are actually at fault for the delay. Putting aside the fact that Lewis objected to all requests for a continuance, the Court recently rejected a similar argument in *United States v. Rey*:[23]

> The Court agrees that the government's decision to install a pole camera and leave it running twenty-four hours per day, seven days per week for over a year placed Rey in the impossible position of choosing between two equally important Constitutional rights: his right to effective assistance of counsel and his right to a speedy trial.[24]

Counsel for Defendants could have foregone their requests for continuances, but they would have done so by assuring they were not meeting their obligations to their clients.  Defense counsel was

---

[22] The Executive Branch, as the Branch of the U.S. Government charged with enforcement of the laws, of course has discretion in how it chooses to investigate criminal cases.  The Court does not intend to unduly invade upon its discretion with this Order, and thus does not offer a restrictive definition of what is "appropriate" use of a pole camera.  The Court merely states that the use of the pole camera in this case strayed into the realm of the inappropriate, primarily because of the immense burden on Defense counsel and the resulting effect on Defendants, as they were effectively forced to choose between their right to effective assistance of counsel and their right to a speedy trial.

[23] 2021 WL 5371489 (D. Kan. 2021).

[24] *Id.* at *3.

obligated to review the footage the Government had created with an eye toward any and all exculpatory evidence, and given the volume of the footage, they could not have done so without requesting continuances.  Thus, the Court cannot conclude that Defendants are at fault for the delay in bringing this case trial.  The blame instead lies at the feet of the Government.  Still, there is no evidence of purposeful delay on the part of the Government.  As such, the Court concludes mere negligence caused the delay, and this factor weighs slightly in favor of Lewis and Ponds.

### 3.    Defendants' Assertion of Their Rights

The third *Barker* factor puts the burden on the defendant to show he desired a speedy trial.[25] The court considers "whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch."[26]  "A defendant's early and persistent assertion of his right to a speedy trial will tip the third factor in his favor, but efforts to stall the proceedings, such as moving for many continuances, will tip the balance of this factor heavily against the defendant."[27]

This is the first factor where there are some distinctions between Ponds and Lewis.  The Government asks the Court to find Ponds' assertion of his rights lacking, as he has only once asserted his speedy trial rights.  But this belies the unique timing of Ponds' case.  Though indicted almost a year prior, Ponds was actually arrested in December 2020 and did not come before this Court until March of the next year.   In July 2021, Ponds filed a notice of his demand for a speedy trial, and three months later he filed the instant motion.   In his case, the Court is satisfied that this constitutes the "early and persistent assertion" of his speedy trial rights, as he asserted his rights a

---

[25] *See Gould*, 672 F.3d at 938.

[26] *Muhtorov*, 20 F.4th at 650 (quotation omitted).

[27] *Id.* (quotation omitted).

mere three or four months after he appeared before this Court, and has continued to do so with the instant motion. This is enough to tip this factor in Ponds' favor.

In perhaps an even more clear case, Lewis has, at every stage prior to trial, forcefully asserted his rights to a speedy trial. After his arraignment, he objected to any extra delay of his detention hearing. He objected to Government's motion to designate the case as complex and invoked his speedy trial rights as guaranteed by the Constitution at that time. Lewis has renewed this objection at virtually every hearing since and has never joined any requests for continuances. This is exactly the behavior, the "early and persistent assertion" of his speedy trial rights, that should cause this factor to weigh in Lewis's favor.

The Government responds that Lewis has not done enough to assert his speedy trial rights. The Government contends his objections to continuances were merely "lip service," and that if "Mr. Lewis were sincere in his objections to speedy trial, then he could have filed a motion to sever, sought to exclude the pole cam evidence, or filed any dispositive motion." There are a few problems with this argument. First, it assumes that a defendant is solely responsible for assuring that he is brought to trial within the parameters staked out by the Constitution. This is simply not true.[28] Second, the Government would require defendants to have a particular litigation strategy in order to assert their speedy trial rights. Neither the text of the Constitution nor Supreme Court precedent supports such a rigid interpretation of a defendant's obligations in this context. Defendants need not take every possible step to get themselves to trial immediately. Rather, they need only show that their "behavior during the course of litigation evinces a desire to go to trial

---

[28] *See Barker*, 407 U.S. at 527 ("A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process."); *Dickey v. Florida*, 398 U.S. 30, 37 (1970) ("Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial.").

with dispatch."[29]  And finally, even if Lewis did move earlier to sever his case, the mountain of discovery discussed previously would still require him to chose between his right to effective assistance of counsel and his right to a speedy trial.  Because Lewis has asserted his speedy trial rights early and often, this *Barker* factor weighs in his favor.

    4.    *Prejudice*

        Finally, the fourth *Barker* factor considers if and how the defendant was prejudiced by the delay.  The defendant bears the burden of showing prejudice.[30]  A defendant can generally establish prejudice in two different ways: "(1) a presumption of prejudice, or (2) specific evidence of prejudice."[31]  A presumption of prejudice arises in cases of "extreme delay," which is typically limited those delays lasting at least six years.[32]  The delay in this case is not near this long, so no such presumption is available to Lewis or Ponds.

        When the presumption is not available, the defendant, to tip this factor in his favor, must come forward with specific evidence of prejudice.  Typically, the "failure to specify prejudice will eviscerate the defendant's claim."[33]  A defendant may show specific evidence of prejudice in three ways: (i) oppressive pretrial incarceration; (ii) anxiety and concern associated with such incarceration; and (iii) the possibility that the defense will be impaired.[34]

        Lewis and Ponds both have an equivocal claim that they have suffered oppressive pretrial incarceration.  Ponds has spent over a year in pretrial incarceration and Lewis has spent almost

---

[29] *Muhtorov*, 20 F.4th at 650 (quotation omitted).

[30] *See United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009).

[31] *Muhtorov*, 20 F.4th at 653.

[32] *Id.* (quoting *Toombs*, 574 F.3d at 1275).

[33] *United States v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014) (citation omitted).

[34] *Barker*, 407 U.S. at 532.

two. Generally, defendants found to have suffered oppressive pretrial incarceration have faced much longer confinement.[35]  But on the other hand, both were confined in county penal facilities, which courts have found to be "particularly oppressive."[36]  Ultimately, this factor seems to weigh neither for nor against a finding of prejudice.

Both Lewis and Ponds claim that they have suffered anxiety and concern as a result of their pretrial incarceration.  But these sorts of "generalized and conclusory references to the anxiety and distress that purportedly are intrinsic to incarceration are not sufficient to demonstrate particularized prejudice."[37]  Rather, a defendant must allege "special harm suffered which distinguishes his case from that of any other arrestee awaiting trial."[38]  Neither Ponds nor Lewis has done so here.  This factor must therefore weigh against a finding of prejudice.

Finally, under the most important prejudice factor, a defendant may show his defense has been impaired to show specific prejudice.  The defendant must state this impairment with particularity, must present evidence that the delay caused the impairment to his defense, and show that, if he was on notice of the need to preserve evidence, he took steps available in an attempt to do so.[39]  Neither Defendant makes any effort to make those showings here, instead choosing to rely on conclusory statements that the delay *must have* impacted the memory of witnesses, without

---

[35] *See, e.g., United States v. Tigano*, 880 F.3d 602, 618 (2d Cir. 2018) (Seven years); *Muhtorov*, 20 F.4th at 656 (Six-and-a-half years).

[36] *Tigano*, 880 F.3d at 618; *Barker*, 407 U.S. at 532–33 ("Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time."); *Muhtorov*, 20 F.4th at 656 ("[A]ll but a few weeks of Mr. Muhtorov's pretrial incarceration was in county penal facilities, which supports a finding of prejudice due to the lack of rehabilitation programs and visiting privileges in local jails that are offered by state and federal penal systems."); *United States v. James*, 712 F. App'x 154, 163 (3d Cir. 2017) ("We have recognized that there may be cognizable prejudice stemming from being confined to a local jail rather than a state (or, presumably, federal) prison better equipped for long-term incarceration.")

[37] *United States v. Larson*, 627 F.3d 1198, 1210–11 (10th Cir. 2010).

[38] *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994) (citation omitted).

[39] *See Muhtorov*, 20 F.4th at 654–55 (citations omitted).

-12-

identifying which witnesses may have been impacted or how their upcoming testimony may have changed to prejudice Defendants.[40]  These conclusory statements are particularly unavailing in this case, which is so heavily reliant on video and communication transcripts, rather than a witness's memory of a particular event.  Nor have Defendants shown causation or their own attempts to preserve the evidence.  This is simply not sufficient to show particularized prejudice.  Because Defendants have largely failed to bring specific evidence of prejudice and a presumption of prejudice is not available to them, the Court must conclude that the fourth *Barker* factor weighs against finding a speedy trial violation.

## V.     Conclusion

It comes time for that difficult weighing and balancing that is required of this Court for Constitutional Speedy Trial claims under *Barker*.  For those keeping score at home, both Otis Ponds and Kevin Lewis have two factors that weigh in their favor (the reason for the delay and their assertion of their rights), while the remaining two do not.  The Supreme Court has instructed courts to apply the four factors flexibly, and that none of "these factors have [] talismanic qualities; courts must still engage in a difficult and sensitive balancing process."[41]  The Tenth Circuit has offered further guidance that while "no single factor is a necessary or sufficient condition to the finding of the deprivation of the right of speedy trial, the lack of prejudice is nearly fatal to a claim."[42]

---

[40] *See id.* ("The particularity requirement thus ensures . . . that the defendant is not speculating about the testimony by 'merely conjuring up potential witnesses.' ") (quotation omitted).

[41] *Barker*, 407 U.S. at 533.

[42] *United States v. Nixon*, 919 F.3d 1265, 1278 (10th Cir. 2019) (cleaned up).

Neither Defendant has specified prejudice they have suffered as a result of the delay.  Given the Tenth Circuit's pronouncements, this is "nearly fatal" to their claims.  And the final nail comes from the Court's finding that the delay in this case, approaching two years, should not weigh in favor of Defendants because of the immense complexity of this case.  While the other two factors weigh slightly in favor of Defendants, this is not enough to conclude a Speedy Trial violation under *Barker* has occurred.  Though the Court has repeatedly admonished the Government for its unreasonably cumulative investigation of this case and the consequences for Defendants and their counsel, the Court cannot order the extraordinary remedy of dismissal with prejudice based on the record before it.  Therefore, both Motions to Dismiss for Constitutional Speedy Trial Violations are denied.

## B.    Statutory Speedy Trial Claims

Kevin Lewis also asks the Court to find that his statutory speedy trial rights have been violated.  The Speedy Trial Act provides that a defendant must be brought to trial within 70 days from the date the indictment is filed or from the date when the defendant makes his first appearance, whichever occurs last.[43]  The Act provides that this time period may be extended based on the exclusions in 18 U.S.C. § 3161(h).

The Court, when it granted the Government's motion to designate the case complex, specified that it did so under the authority of § 3161(h)(7)(B) and that the case would thereafter proceed outside of the ordinary time limits of § 3161(c).  The Court further found, as required by the Act, that "ends of justice served by granting this continuance outweigh the best interests of the public and the defendants in a speedy trial."  The Court has made the same findings at every

---

[43] 18 U.S.C. § 3161(c)(1).

continuance that it has been granted.  Accordingly, Lewis's request for relief under the Speedy Trial Act is without merit.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss for Constitutional and Statutory Speedy Trial Violations (Docs. 561 and 608) are **DENIED.**

**IT IS SO ORDERED.**

Dated this 16th day of February, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE